UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARRY M. JENKINS,

        Petitioner,

v.                                  Case No. 08-C-574

JAMES DOYLE,

        Respondent.

**DECISION AND ORDER DENYING WRIT OF HABEAS CORPUS**

      Barry M. Jenkins, an inmate at the Wisconsin Secure Program Facility, filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254, in which he claims his conviction and sentence were imposed in violation of the Constitution. By his plea of guilty Jenkins was convicted in Milwaukee County Circuit Court on February 24, 2003 of one count of delivery of heroin in an amount of less than three grams. (Doc. # 15 Ex. A.) He was sentenced on April 28, 2003 to eight years' imprisonment, consisting of five years initial confinement and three years of extended supervision. (*Id.*) This Court examined Jenkins' amended petition pursuant to Rule 4 of the Rules Governing § 2254 Cases and allowed Jenkins to proceed with two claims. (Doc. # 8.) The two claims Jenkins now advances are (1) that he did not knowingly enter his guilty plea because of his misunderstanding about having an opportunity to work with law enforcement; and (2) that his trial counsel was ineffective for failing to adequately explain the plea agreement. (*Id.* at 7-8.) For the reasons stated below, Jenkins' petition is denied.

## I. BACKGROUND

The factual and procedural background of this case has been thoroughly laid out in the opinion of the Wisconsin Supreme Court addressing Jenkins' presentence motion for plea withdrawal, *State v. Jenkins*, 2007 WI 96, ¶¶ 7 - 27, 303 Wis. 2d 157, 165-74, 736 N.W. 2d 24, 28-32 (Wis. 2007). In short, although Jenkins provided what detectives acknowledged was "good information" concerning illegal drug activity to state authorities, he was unable to get any "credit" for his assistance unless he could arrange a narcotics transaction, an impossibility because of his incarceration. Although it was suggested that he might benefit from cooperation with federal authorities, an option defense counsel made significant efforts to arrange, at the time of Jenkins' sentencing hearing, no federal agents had contacted him. After Jenkins entered a guilty plea under a plea agreement but prior to his sentencing, Jenkins wrote the trial court and indicated his plea was not genuine or of his own free will. Defense counsel moved for an adjournment of the sentencing hearing, but upon questioning by the trial court, indicated that Jenkins' cooperation with law enforcement was not a term of the plea agreement, but merely an opportunity Jenkins had hoped to take advantage of with the knowledge that his guilty plea was a prerequisite. The trial court denied Jenkins' motion to withdraw his plea and conducted a sentencing hearing.

On direct appeal, Jenkins challenged the trial court's order denying his request to withdraw his guilty plea prior to sentencing. The trial court denied the motion after determining there was no fair and just reason to allow Jenkins to withdraw his plea. The court also denied Jenkins' claim that his trial counsel was ineffective for failing to adequately explain the terms of the plea agreement. (Doc. # 15 App. to Ex. B at 104-05.) Jenkins then appealed his conviction and the trial court's order denying postconviction relief to the Wisconsin Court of Appeals, raising the same

issues. The appellate court reversed, holding the trial court erroneously exercised its discretion when it denied Jenkins' presentencing motion to withdraw his plea, as he had demonstrated a fair and just reason to withdraw his plea based upon his misunderstanding he would be able to cooperate with law enforcement and potentially benefit from it.[1] 2006 WI App 28, 289 Wis.2d 523, 710 N.W.2d 502 (Wis. Ct. App. 2006). The Wisconsin Supreme Court reversed the court of appeals, concluding the trial court did not erroneously exercise its discretion when it denied Jenkins' motion to withdraw his plea. 2007 WI 96, ¶ 92, 303 Wis. 2d 157, 201, 736 N.W. 2d 24, 46.

## II. ANALYSIS

### A. Standard of Review

The federal habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[1]The court of appeals did not address the trial court's ruling on Jenkins' claim that his defense counsel was ineffective for failing to adequately explain the terms of the plea agreement.

3

A state court decision is "contrary to" established Supreme Court precedent when the court applies a rule different from governing Supreme Court cases or confronts a set of facts that is materially indistinguishable from those of a Supreme Court decision and arrives at a different conclusion. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). If the case involves an "unreasonable application" of Supreme Court precedent, this Court must defer to reasonable state court decisions and cannot grant the writ unless the state court's decision was objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The decision which this Court must review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).

The Supreme Court has been less than clear in its discussion of when an application of its precedent is objectively unreasonable. An unreasonable application of federal law, the Court has said, is not the same as one that is, in the view of the reviewing court, incorrect. *Bell*, 535 U.S. at 694. Nor is an unreasonable application one that reasonable jurists would all necessarily agree is unreasonable. *Williams*, 529 U.S. at 409. To meet the unreasonable application standard, the decision of the state court must be more than clearly erroneous, *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); it must fall "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

The factual determinations of the state court are presumed correct and can only be found to be unreasonable if the petitioner can demonstrate they are so by clear and convincing evidence. 28 U.S.C. 2254(e)(1); *see also Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004).

**B. Voluntariness of Plea**

A plea of guilty or no contest is not constitutionally valid unless it is made knowingly and voluntarily. *Parke v. Raley*, 506 U.S. 20, 28 (1992); *Santobello v. New York*, 404 U.S. 257, 261 (1971); *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). This is so "because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Parke*, 506 U.S. at 29 (citing *Boykin*, 395 U.S. at 243).

In examining whether a plea was properly made, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. As guilty pleas are generally accorded finality, the defendant bears the burden of demonstrating that a plea was involuntary after it has been entered. *Marx v. United States*, 930 F.3d 1246, 1250 (7th Cir. 1991) (citations omitted).

In considering Jenkins' claim that his guilty plea was constitutionally infirm, the question is whether the Wisconsin Supreme Court's reversal of the appellate court's decision reversing the trial court's denial of Jenkins' motion to withdraw his plea was an unreasonable application of clearly established Federal law as determined by the Supreme Court. Because I conclude it was not, Jenkins' petition challenging the voluntariness of his plea is denied.

The Wisconsin Supreme Court discussed at length the "fair and just reason" standard for allowing a defendant to withdraw a guilty plea prior to sentencing and emphasized the trial court's

5

discretion in the inquiry. 2007 WI 96, ¶¶ 28-68, 303 Wis. 2d at 175-93, 736 N.W.2d at 33-42. The court noted three obstacles to such a withdrawal at the time such a motion is made.

> First, the defendant must proffer a fair and just reason for withdrawing his plea. *Canedy*, 161 Wis.2d at 583-84, 469 N.W.2d 163. Not every reason will qualify as a fair and just reason. Second, the defendant must proffer a fair and just reason that the circuit court finds credible. *Id*. at 585, 469 N.W.2d 163. In other words, the circuit court must believe that the defendant's proffered reason actually exists. Id. Third, the defendant must rebut evidence of substantial prejudice to the State. *Id*. at 582, 469 N.W.2d 163.

*Id*. at ¶ 43, 303 Wis. 2d at 182, 736 N.W.2d at 36. The Wisconsin Supreme Court noted that if the defendant is unsuccessful in overcoming these three obstacles at the trial court, on appeal the defendant faces two additional obstacles. The defendant must first show that the trial court's decision was clearly erroneous and then show that the plea was not knowing, intelligent or voluntary in light of the plea colloquy. *Id*. at ¶ 44, 303 Wis. 2d at 182, 736 N.W.2d at 36-37.

The Wisconsin Supreme Court found that the trial court properly exercised its discretion in determining the validity of Jenkins' claim that he thought he would be guaranteed the chance to work with law enforcement if he pled guilty.

> Even after the court explicitly asked Jenkins at sentencing about his understanding about what was going to happen when he entered a plea, he did not assert that he thought his cooperation with law enforcement would lead to definite sentencing benefits.

*Id*. at ¶ 72, 303 Wis. 2d at 194, 736 N.W.2d at 42. Jenkins instead "discussed how he wanted to help the community through his cooperation and help himself by getting out of the life he was living. *Id*.

6

The court also examined the credibility finding of the trial court. It noted that, contrary to his claimed misunderstanding, the trial court found that Jenkins did not really misunderstand his plea agreement. Jenkins' desire to benefit from cooperating with law enforcement was a "hope that did not come to fruition", and Jenkins decided to take his chances that he would meet with law enforcement and receive some benefit as a result. *Id*. at ¶¶ 73-74, 303 Wis. 2d at 194-95, 736 N.W.2d at 42-43.

In addition, the Wisconsin Supreme Court also conducted an independent review of the record and found that it supported the trial court's decision, even assuming Jenkins was correct in his claim that the trial court applied the wrong legal standard. *Id*. at ¶ 75, 303 Wis. 2d at 195, 736 N.W.2d at 43. The court examined the record of the plea colloquy and found it notable that it contained no reference of Jenkins' potential cooperation with law enforcement. *Id.* at ¶ 78, 303 Wis. 2d at 196, 736 N.W.2d at 43. This examination also discussed the fact Jenkins acknowledged that he understood that the trial court was not bound by the State's sentencing recommendation and that Jenkins had not been promised anything in order to plead guilty. *Id*. at ¶¶ 79-80, 303 Wis. 2d at 196-97, 736 N.W.2d at 43-44. The colloquy further established that Jenkins understood the charge and its factual basis. *Id*. at ¶¶ 81-84, 303 Wis. 2d at 197-98, 736 N.W.2d at 44.

The state's high court also discussed three letters in the case. The first was a letter from Jenkins' counsel to him, approximately two months before he entered his plea, about his possible cooperation with law enforcement. *See Id*. at ¶ 10, 303 Wis. 2d at 166-67, 736 N.W.2d at 28-29. The court accepted the trial court's finding that the letter referred to mere "possibilities" and did not amount to any "guaranteed opportunity." *Id.* at ¶ 85, 303 Wis. 2d at 198, 736 N.W.2d at 44. The other two letters the court examined were sent from Jenkins to the trial court. The first was sent

7

prior to his guilty plea, and the court found that in it Jenkins "foreshadowed accepting the State's plea offer without any reference to future cooperation with law enforcement." *Id*. at ¶ 86, 303 Wis. 2d at 198, 736 N.W.2d at 44. In the second letter, sent after his plea but before sentencing, Jenkins expressed his belief that he would have to plead guilty to the charge in order to receive any type of benefit. *Id*., 303 Wis. 2d at 198-99, 736 N.W.2d at 44. He also claimed that the plea he entered was not genuine or of his own free will, but was made rather "for the purpose of mentally gaining [the court's] approval." *Id*. at ¶ 86, 303 Wis. 2d at 199, 736 N.W.2d at 45 (alteration in original). The Court found that Jenkins' contradictions supported the trial court's finding that Jenkins was not credible. *Id*. at ¶ 87, 303 Wis. 2d at 199, 736 N.W.2d at 45.

Jenkins claims that he made his guilty plea with the understanding that he would be guaranteed an opportunity to cooperate with law enforcement and possibly obtain a lower sentence. The trial court found that Jenkins did not have any such misunderstanding when he actually entered his plea. The Wisconsin Supreme Court agreed that the record supported such a finding. Both courts concluded that Jenkins actually knew that his plea of guilty might afford him the opportunity to cooperate with law enforcement, and if it were significant, could have a favorable effect on his sentence. The Wisconsin Supreme Court's decision, the decision which this Court reviews on this issue, concluded that Jenkins entered his plea knowing it was without any guarantees. As it found that Jenkins did not misunderstand the consequences of his plea or his plea agreement, it found his plea was knowingly, voluntarily and intelligently entered. As its thorough opinion demonstrates, the court made this determination "by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.

8

Case 1:08-cv-00574-WCG   Filed 01/13/09   Page 8 of 12   Document 21

Jenkins' credibility in claiming he misunderstood the consequences of his plea was an important basis for the Wisconsin Supreme Court's decision. Courts reviewing a petition under § 2254 must presume that the factual determinations of state courts, to include those of credibility, are correct. *Murrell v. Frank*, 332 F.3d 1102, 1112 (7th Cir. 2003). Jenkins has not produced anything to disturb the Court's confidence in the credibility determinations and factual findings made by the state court, as is his burden to do by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because I conclude that the Wisconsin Supreme Court's decision was not an unreasonable application of clearly established Federal law as determined by the Supreme Court, Jenkins' petition for a writ of habeas corpus on the claim his guilty plea was involuntary is denied.

**C. Ineffective Assistance of Counsel**

Jenkins' other claim is that his trial counsel was ineffective for failing to adequately explain the terms of the plea agreement to him. Jenkins contends that his counsel incorrectly advised him that pleading guilty under the agreement would guarantee him an opportunity to cooperate with law enforcement and that this would benefit Jenkins at sentencing. Jenkins claims he would not have entered a guilty plea but for this advice. The primary evidence of counsel's advice regarding Jenkins' chance of working with law enforcement is counsel's letter to Jenkins sent before Jenkins entered his plea. (Doc. # 16.)

In order to show ineffective assistance of counsel petitioner must show that counsel's representation was deficient, *i.e.*, that it fell below an objective standard of reasonableness, and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance standard gives a wide latitude of permissible attorney conduct, and a petitioner "must

9

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks deleted); *see also Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000). If the prisoner has identified specific omissions, the court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Once the prisoner establishes his counsel's ineffectiveness, he must still demonstrate prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Id.* at 697. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed. *Id.* When a petitioner advances a challenge to a guilty plea based upon ineffectiveness of counsel he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The last, and only, state court to address the merits of Jenkins' claim that his trial counsel was ineffective for failing to adequately explain the terms of the plea agreement was the trial court. *See supra* note 1. The trial court decided as it did based upon its determination that Jenkins was not credible in claiming he misunderstood his plea agreement, along with its finding that the letter from Jenkins' counsel could not reasonably be construed as a "guaranteed opportunity" to work with law

10

enforcement.[2] The question is whether these factual determinations of the trial court were unreasonable in light of the evidence presented. I conclude they were not.

In its written decision, the trial court noted that the letter from counsel "refers to a multitude of *possibilities*, none of which a reasonable person would construe as a guaranteed opportunity, as the defendant suggests." (Doc. # 15 App. to Ex. B at 105.) (emphasis in original) (internal quotation marks omitted). The trial court also noted that Jenkins' claim that he thought the plea agreement would guarantee him the ability to cooperate with law enforcement was not credible given his statements at the change of plea hearing. At that hearing, Jenkins claimed that the only promise made to him in exchange for his plea of guilty was the agreement of the government to recommend a sentence of 24 months confinement, 24 months extended supervision and a fine of $1,000 plus costs. (Id.)

I conclude that decision of the state trial court denying Jenkins' claim of ineffective assistance of counsel was not based on an unreasonable determination of the facts in light of the evidence presented. Jenkins' petition is denied as it relates to this claim.

## III. CONCLUSION

The record does not support a finding that the decision of Wisconsin Supreme Court denying Jenkins' claim that his plea was involuntary was an unreasonable application of clearly established

---

[2] The trial court also noted that it was not bound to impose a lesser sentence even if Jenkins had been able to successfully cooperate with law enforcement, and that Jenkins was not precluded from providing information to law enforcement after sentencing and later applying for a sentence modification based upon his cooperation. (Doc. # 15 App. to Ex. B at 105.); *See also State v. Jenkins*, 2007 WI 96, ¶ 104, 303 Wis. 2d 157, 204-05, 736 N.W. 2d 24, 47-48 (Abrahamson, C.J., concurring).

11

Federal law as determined by the Supreme Court. Neither does it support disrupting the trial court's decision to deny Jenkins relief on his claim that his counsel was ineffective for failing to explain the plea agreement.

**THEREFORE IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus is denied.

**IT IS ALSO ORDERED** that this action is dismissed.

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

Dated this   13th   day of January, 2009.

 s/William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge